■ In the Matter of JEROME GOLDMAN et al., Petitioners, v

RODERICK CHU, as Commissioner of the State Tax Commission, et al., Respondents.—Weiss, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of the State Tax Commission which sustained a sales and use tax assessment imposed under Tax Law articles 28 and 29.

Petitioners are the responsible corporate officers of Duplad Copier Corporation (Duplad) which, in 1975, commenced business leasing, distributing and servicing photocopier machines manufactured by Minolta Corporation (Minolta). On September 25, 1981, Duplad, being indebted to Minolta for $3,300,000 for goods provided, entered into a settlement agreement with Minolta and Minoco Copier Corporation (Minoco), a wholly owned subsidiary of Minolta. Pursuant to the asset acquisition agreement, Minolta assigned $2,000,000 of Duplad's debt to Minoco which, in turn, acquired all of Duplad's assets and most of its records in exchange for retirement of $2,000,000 of Duplad's debt. On December 30, 1981, following an audit of Duplad's records, the Audit Division of respondent Department of Taxation and Finance issued notices of determination and demand for payment of sales and use taxes against Duplad and petitioners for the sum of $73,175.14, which included $57,809.48 plus interest as tax due upon the transfer of assets to Minoco. Following a hearing upon petitioners' appeal, the State Tax Commission sustained the determination giving rise to this CPLR article 78 proceeding.

The initial issue is whether the Tax Commission correctly determined that the transfer of Duplad's assets, while concededly not a taxable bulk sale (Tax Law § 1141 [c]; 20 NYCRR 537.1 [a] [4] [i]), was nevertheless subject to sales tax as a retail sale of tangible personal property (Tax Law § 1105 [a], [c]; 20 NYCRR 526.7 [a] [3]). A retail sale is defined as a sale of tangible personal property for any purpose, other than for resale (Tax Law § 1101 [b] [4] [i] [A]). A sale is defined as any transfer of title or possession for consideration (Tax Law § 1101 [b] [5]). The term sale is further defined in 20 NYCRR 526.7 (a) (3) as the transfer of tangible personal property in a repossession or foreclosure action, including but not limited to voluntary relinquishment, assignment or seizure by a mortgagee.

Petitioners contend that the transfer was neither a sale for consideration subject to taxation nor a bulk sale because they surrendered corporate assets to Minoco in exchange for the extinguishment of Duplad's outstanding indebtedness to Minolta. Respondents concede that the transaction was a trans-

fer in settlement of a debt and not a bulk sale subject to the sales tax *(see,* 20 NYCRR 537.1 [a] [4] [i]). However, respondents maintain, and we agree, that the transfer was taxable as a "sale" under the broader definition of a retail sale (Tax Law § 1101 [b] [5]; 20 NYCRR 526.7 [a] [3]). That the transaction was not a bulk sale does not compel a different conclusion *(see,* 20 NYCRR 537.1 [a] [2]). This decision was neither arbitrary nor capricious and is supported by substantial evidence in the record.

Petitioners next contend that the transfer of Duplad's customer records did not constitute a taxable transfer of a customer mailing list *(see,* Tax Law § 1105 [c] [1]; 20 NYCRR 527.3 [a] [1]-[3]). We agree. The records in issue consisted of manila folders for each customer containing, *inter alia,* the sales contract, service maintenance agreement, shipping and billing documents, and a chart chronologically listing each customer's orders. The records were delivered to Minoco upon execution of the asset acquisition agreement to allow Minoco to continue servicing the customers. An actual list of the customers was not provided. As recently observed by the Court of Appeals in *Matter of Skaggs-Walsh, Inc. v New York State Tax Commn.* (69 NY2d 818, *revg* 120 AD2d 786), which involved proceedings arising out of the bulk sales of the assets of fuel oil distribution businesses, "it is the sale of the *service* of furnishing information by a business whose function it is to collect and disseminate information which is taxable under Tax Law § 1105 (c) (1) and not the mere sale of information" *(supra,* at 819-820 [emphasis supplied]). Here, there is no question that petitioners were not engaged in the business of furnishing information. The customer records were simply transferred to implement the agreement settling a debt. Under these circumstances, the sale of the customer records was not taxable under Tax Law § 1105 (c) (1) *(see, supra).* Having so determined, the matter must be remitted to the Tax Commission for an appropriate adjustment of the tax assessment.

We also find meritless petitioners' final argument that the use of a test period method of auditing was improper. The Tax Commission determined that a "test period" method of audit was required because of Duplad's inadequate record keeping and failure to provide all of the purchase records necessary for the audit *(see,* Tax Law § 1138 [a] [1]; *Matter of Grant Co. v Joseph,* 2 NY2d 196, 206, *cert denied* 355 US 869; *cf., Matter of Kennedy & Co. v Chu,* 125 AD2d 773). The burden is upon petitioners to show by clear and convincing evidence that the method of audit used was erroneous *(see, Matter of Carmine*

*Rest. v State Tax Commn.,* 99 AD2d 581). This burden has not been met. In any event, since the tax assessed against petitioners related solely to the sale of assets by Duplad to Minoco and not to the tax assessed as the result of the test audit, their argument concerning the test period method of audit is not relevant.

Determination modified, on the law, without costs, by annulling so much thereof as imposed a tax on the transfer of Duplad Copier Corporation's customer records; matter remitted to the State Tax Commission for further proceedings not inconsistent herewith; and, as so modified, confirmed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.