[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff is the owner of a restaurant known as Butterfly Restaurant in West Hartford, Connecticut, which serves Chinese food. The defendant, Department of Revenue Services ("DRS"), audited the plaintiff's sales tax returns for the period July 1, 1991 through June 30, 1993. As a result of such audit, DRS assessed the plaintiff for sales and use tax the sum of $38,083.31, representing $25,437.31 tax, plus interest and CT Page 4130 penalties, for the audit period. The plaintiff appealed such assessment to the DRS Appellate Division. Following DRS Appellate Division hearings, the plaintiffs petition for reassessment was denied on October 23, 1995.
The plaintiff, as a taxpayer aggrieved by a DRS order, decision, determination or disallowance, is authorized pursuant to General Statutes § 12-422 to appeal to the Superior Court. In such an appeal, the Superior Court hears the case de novo.Gallacher v. Commissioner of Revenue Services, 221 Conn. 166, 176
(1992); American Totalisator Co., Inc. v. Dubno, 210 Conn. 401,413 (1989);Kimberly-Clark Corp. v. Dubno, 204 Conn. 137,144-45(1987). The burden of proving that an assessment of a deficiency tax is erroneous is on the plaintiff. H.B. Sanson.Inc. v. Tax Commissioner, 187 Conn. 581, 586 (1982); seeFusco-Amatruda Co. v. Tax Commissioner, 168 Conn. 597, 599 (1975).
Following pretrial briefing the case went to trial before the Court on January 21, 1999. The parties appeared through counsel and presented documentary and testamentary evidence. The facts established through the trial indicate that the plaintiff had filed tax returns for the audit period July 1, 1991 through June 30, 1993. DRS routinely audits such returns and did so with respect to the plaintiff's business. The plaintiff did not, at the time of the audit, have available ledgers, cash register receipts, guest checks or bank statements for the audit period from which the reported gross receipts could be established. The DRS examiners used the means of a test period to determine mark up over cost for meals and liquor. These test period results were then projected over the two year audit period to arrive at audited gross receipts from which the sales tax could be calculated. The examiner's findings based on the test period were that the plaintiff had understated its gross receipts for the audit period. The resulting assessment represents additional tax plus penalty and interest on the difference between audited gross receipts and the gross receipts reported by the plaintiff on its returns.
The plaintiff was required by statute and regulation; General Statutes § 12-426; Regs., Conn. State Agencies (RCSA) §12-426-23; to maintain records. "Such records shall include the normal books of account ordinarily maintained by the average prudent business man engaged in the activity in question, together with all bills, receipts, invoices, cash register tapes or other documents of original entry supporting the entries in the books CT Page 4131 of account as well as schedules or working papers used in connection with the preparation of tax returns." RCSA § 12-426-23
(3).
The manager and part owner of the plaintiff corporation testified that at the time of the audit guest checks were not available, that the waiters kept them. The records also do not include payroll checks as the employees were paid in cash. The cash register receipts were also unavailable. The plaintiff's manager challenged the mark up computations used by the auditor. The plaintiff's manager testified of the competitive Chinese restaurant market in the West Hartford area, the use of discount coupons, free food to diners and "happy hour" customers, free meals for the employees, and free drink coupons. In addition, the plaintiff's manager contended that DRS had used inaccurate cost figures in computing meal costs for the audit. In addition, a former employee of the plaintiff corporation testified confirming the happy hour free food, free drinks and extensive use of free coupons by customers.
The DRS evidence included the testimony of the auditor who had extensive experience particularly in auditing restaurants. He testified about the documents necessary to determine the actual gross receipts and their unavailability in the audit of the plaintiff's returns. The auditor further testified to the use of a mark up test which was usually calculated for a six month period. He testified that he never used a period longer than six months for such a test period. He further testified to his review of invoices, his netting out of non-food items, and his review of the cost items with the plaintiff's manager. He testified to an agreement as to the costs and sales price of representative menu selections. The actual data reflected the lowest representative mark up of 201%, but a 150% mark up was used to reflect the use of coupons, free food and discounts. The DRS auditor also testified about a two week period, not part of the time for which the audit was done, when actual guest checks and tapes were used. The actual liquor mark up was approximately 398% and a 150% mark up was used to determine audited gross receipts.
The mark up figures used by the DRS were conservative to reflect the use of discounts, distribution of free food, free drinks, spoilage and to insure an equitable result.
Where the taxpayer has adequate records, DRS must use those to determine the taxpayer's gross receipts; Constantine v.CT Page 4132Commissioner of Revenue Services, Superior Court, Docket No. CV 91 0390484, Tax Session, (May 23, 1994, Aronson, J.)
In a case such as this where the plaintiff has failed to maintain the records required by statute and regulation, the plaintiff is obviously not relieved from its obligation to pay sales tax on its actual gross receipts. DRS, charged with the enforcement of the sales tax laws, must have a method for equitably determining the audited gross receipts. In the instant case, DRS used a re-creation of a six month period which was extended over the life of the audit; as well as an actual two week period as a further means of checking the reasonableness of the audit calculations. The mark up standards were recognized in the restaurant industry and generally reflected the discount factors referenced by the plaintiff's witnesses.
Essentially the plaintiff argues that the figures reflected on its return may be correct, though not substantiated by the types of records which are required by statute and regulation. The plaintiff further claims that the DRS audit method is not entirely accurate, but is unable to suggest another method by which the court could calculate the "audited gross receipts". The plaintiff's method of calculating its gross receipts is essentially unsubstantiated. The DRS method is a conservative industry recognized means which reasonably calculates gross receipts in the absence of sufficient records. The plaintiff has failed to meet its burden of proof of demonstrating that the sales tax has been inequitably applied in the audit period.
Judgment enters for the defendant, DRS, for the amount of the tax, plus penalty and interest pursuant to General Statutes §12-415.
Robert F. McWeeny, J.